NING LILLY & JONES
MICHAEL A. LILLY     #1681
VALERIE KATO          #7449
707 Richards Street, Suite 700
Honolulu, HI 96813
Telephone: (808) 528-1100
Facsimile: (808) 531-2415
Email: Michael@nljlaw.com
Email: vkato@nljlaw.com

JOHN J. CONWAY, III  P56659 *pro hac vice (application pending)*
26622 Woodward Avenue, Suite 225
Royal Oak, Michigan 48067
Telephone: (313) 961-6525
Facsimile: (248) 545-1839
Email: jj@jjconwaylaw.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CALVIN L. HUTTON, | CIVIL NO. 18- |
|      Plaintiff, | **PLAINTIFF'S COMPLAINT FOR ENFORCEMENT OF HIS RIGHTS TO EMPLOYEE WELFARE BENEFITS UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 ("ERISA")** |
| vs. | |
| CERIDIAN HCM, INC., a Delaware corporation, CERIDIAN CORPORATION RETIREMENT PLAN, a defined benefit pension plan, WELLS FARGO BANK, N.A., a Minnesota corporation, and DOE DEFENDANTS 1-50 | |

## COMPLAINT

Plaintiff Calvin L. Hutton, by his attorneys, Ning, Lilly & Jones and John J. Conway, P.C., and for his Complaint against Defendants Ceridian HCM, Inc., Ceridian Corporation Retirement Plan, Wells Fargo Bank, N.A., and Doe Defendants 1-50, states as follows:

## I.      NATURE OF THE ACTION AND JURISDICTION

1.      This civil action is brought under the Employee Retirement Income Security Act of 1974 ("ERISA,") 29 U.S.C. § 1001 *et seq*., to compel the Defendants to provide promised retirement benefits to the Plaintiff in the amounts and at the levels promised, for injunctive relief, recovery and relief for surcharge and unjust enrichment, costs, and attorney fees incurred due to the Defendants' failure to do so.[1]

2.      Defendant Ceridian HCM, Inc. ("Defendant Ceridian" or "Ceridian") publicly markets itself as an experienced consultant to multinational organizations in the area of human resource management with an emphasis on data systems – particularly in the areas of employee benefits, payroll, and workforce management, among others.

---

[1] ERISA is principally codified at 29 U.S.C. § 1001 *et seq*. Many authorities (including some judicial opinions) cite only to the statute or the codification. For the Court's and the parties' convenience, this Complaint uses parallel citations to both.

3.     Defendant Ceridian's flagship product is marketed as a comprehensive, "cloud-based platform for managing the entire employee lifecycle[,]" developed with the vision that, in Ceridian CEO David Ossip's own words, "technology needed to get the right data to the right people at the right time…."

4.     With respect to the claims alleged herein, Defendant Ceridian, as sponsor and administrator of its own human resources programs, specifically its ERISA qualified and non-ERISA benefit programs, and its chosen fiduciaries, made startling mistakes – which it subsequently misrepresented and then refused to correct – with respect to the pension administration of one of its longest tenured and most valuable employees.

5.     Ceridian's actions resulted in the loss or unjust withholding of nearly $1 million in pension benefits earned by Plaintiff during his lengthy service. When asked modestly to rectify its fiduciary breaches and correct its errors, Ceridian took an unusually hard line against Plaintiff, claiming that its own employee benefits software system (used to manage its pension funds) had malfunctioned and offering a multitude of other excuses. According to Ceridian, the system prevented its pension programs from complying with certain screening requirements to ensure benefit accruals were consistent with U.S. tax law.

6.     Rather than correct the problem equitably, Ceridian foisted the loss on an innocent plan member, also its faithful employee, subsequently denying all his

requests for relief.

7.      Ceridian's actions, and their timing, are extremely suspect. The supposed miscalculations and resultant mishandling of this claim occurred in conjunction with a severance offer made to Plaintiff which was, upon information and belief, part of a coordinated effort throughout the past year to trim payroll in advance of an initial public stock offering and private placement.

8.      Upon information and belief, Ceridian initiated a program to reduce its senior workforce and improve the attractiveness of its financials in advance of the IPO and private placement.

9.      In connection with Ceridian's extension of the severance offer to Plaintiff, it simultaneously – and separately – confirmed the specific amount of his accrued pension benefits. In combination, the severance offer and promised pension benefits served as adequate inducement to convince Plaintiff to retire and leave the active payroll.

10.     Following execution of the severance agreement and a related release of claims, and Plaintiff's retirement, Defendant Ceridian announced it would not pay a significant portion of Plaintiff's accrued benefits, claiming that U.S. tax law prevented it, a statement that is not only misleading but also demonstrably incorrect under the applicable tax laws.

11.     Shockingly, when Plaintiff challenged Defendant Ceridian's rationale, disproving Defendant's alleged regulatory hurdle to payment of the promised benefits in full, Defendant shifted its legal stance and cited the severance release agreement against Plaintiff as barring any action to recover promised pension benefits. In other words, Defendant Ceridian provided Plaintiff with pension calculations to induce execution of a severance agreement and corresponding release and, following execution of the agreement and release, Defendant then changed the calculations and sought to use the release as a shield from any recovery of the difference between the promised and paid amounts.

12.     Thus far, Ceridian has wrongfully withheld from Plaintiff nearly $1 million in earned, accrued pension benefits and, upon information and belief based on recently published Securities and Exchange Commission ("SEC") filings in connection with a debt restructuring and IPO, used the Plaintiff's earned pension benefits to offset portions of its 2017 and/or 2018 defined benefit pension contributions. Defendant is using Plaintiff's earned pension benefits to reduce its own required plan contributions and improving its overall financial outlook.

## II.     THE PARTIES AND JURISDICTION

13.     Plaintiff Calvin L. Hutton is a decorated, retired U.S. Navy Commander and a resident of the State of Hawaii, and he resides in this District. Prior to being employed with Ceridian, and its predecessor companies, Plaintiff served in the U.S.

Navy for 26 years. Plaintiff is a "participant" in an employee pension plan sponsored and/or administered by Defendant Ceridian.

14. Defendant Ceridian HCM, Inc. is a Delaware corporation that was, at all relevant times, doing business within this District, and served as plan sponsor, Plan Administrator, and chief fiduciary of Defendant's pension plan, of which Plaintiff was a vested participant.

15. Defendant Ceridian Corporation Retirement Plan is an ERISA qualified defined benefit pension plan of which Plaintiff was a member and was, at all relevant times, operating within this District ("the Plan.")

16. The Plan defendant is a necessary party to accord the full relief sought herein.

17. Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is a Minnesota corporation that was, at all relevant times, doing business within this District, and acted as an ERISA fiduciary with respect to the Plan's administration during relevant periods of this claim.

18. Defendants are "fiduciaries," as defined by ERISA, as they are responsible for determining the eligibility of participants and beneficiaries for benefits under the Plans under ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A).

19. Doe Defendants 1-50 are persons, partnerships, associations, companies, corporations, or entities whose names, identities, capacities, activities

6

and/or responsibilities are presently unknown to Plaintiff or his attorneys, except that Doe Defendants 1-50 were and/or are subsidiaries, servants, employees, representatives, co-venturers, associates, consultants, owners, lessees, lessors, guarantors, assignees, assignors, licensees, and/or licensors of Defendants and were or are in some manner presently unknown to Plaintiff or his attorneys engaged or involved in the activities alleged herein or responsible for the activities of which Plaintiff complains, or should be subject to the relief Plaintiff seeks. Plaintiff prays for leave to certify the true names, identities, capacities, activities and/or responsibilities of Doe Defendants 1-50 when, through further discovery in this case, the same are ascertained. Plaintiff has made a good faith effort to identify said Doe Defendants prior to filing this Complaint.

20.    All or a part of the wrongful conduct and/or transactions described herein occurred within the State of Hawaii, and more specifically, in this District, where Defendants are regularly engaged in commerce and conduct business.

21.    Jurisdiction is proper in this Court under 29 U.S.C. § 1132(e)(1) and (f) and 28 U.S.C. § 2201.

22.    Venue is proper in this District under 29 U.S.C. § 1132(e)(2).

23.    All documents referenced herein are in the possession of Defendants.

### III.    FACTUAL ALLEGATIONS

24.    Plaintiff was, at all relevant times, a "participant" within the meaning

of the Employment Income Security Act of 1974 ("ERISA.")

25.    Plaintiff's participation status was provided through his employment with Defendant Ceridian.

26.    Plaintiff was an employee of Defendant Ceridian, and its related and predecessor companies, for nearly 50 years.

27.    Plaintiff was an exceptional employee during his employment with Defendant Ceridian, growing his local customer base from 12 to over 3,000 individual companies. He achieved more national sales and annual profit goals than any other manager employed with Defendant, worldwide.

28.    Most recently, prior to retirement, Plaintiff held the position of "Vice President and General Manager of the Ceridian Hawaii District" for Defendant Ceridian.

29.    Upon information and belief, in connection with an intended Initial Public Offering ("IPO") and private placement, Defendant Ceridian engaged in several targeted buyouts of long-tenured, upper-management employees in the years leading up to its 2018 IPO.

30.    In connection with its then contemplated IPO, Defendant Ceridian offered Plaintiff and other senior employees retirement and severance packages to induce them to leave the company's active payroll.

31.    On September 26, 2017, in furtherance of this plan, Plaintiff received a

"Benefit Election Form" from Defendant Ceridian, which listed several pension options, including his eligibility for a "Lump Sum" disbursement, which the form stated he had earned and was entitled to receive upon retirement, in the amount of $2,667,925.06 under the Ceridian portion of the Ceridian Corporation Retirement Plan, and in the amount of $45,781.09 under an accrued IBM portion of the Plan.

32.    Similar pension calculations consistent with the final amount had been sent to Plaintiff for a period of at least four years predating the severance, however, the Benefit Election Form, in anticipation of Plaintiff's reliance thereon, was confirmation of the pension's worth and Plaintiff's entitlement to it.

33.    On December 22, 2017, Plaintiff signed the necessary paperwork and accepted the retirement and severance package, submitting his signed agreements and election forms to Defendant Ceridian, within which was included a release of claims.

34.    Only after Plaintiff signed the severance and release of claims, and had retired, did Defendants suddenly and inexplicably announce that they would not honor payment of the pension benefits set forth in and promised by his statements and election forms, claiming (falsely) that the payments could not be made owing to a limitation set forth in the tax code, specifically IRC Section 415.

35.    This constituted a radical departure from previous plan representations. From 2014 through December of 2016, Plaintiff received Benefit Estimate forms

which continuously and consistently reflected a lump sum benefit payable which was accruing without any reference to IRC Section 415 limits.

36.     On January 30, 2018, Defendant Ceridian's Director of Employee Benefits contacted Plaintiff by telephone, informing him, for the first time, that Defendant was applying IRC Section 415 limits to his pension payout and that he would only be entitled to a lump sum payment of $1,768,927.88, resulting in an immediate loss of $944,778.27.

37.     The reduction meant that Plaintiff had, over the course of four plus years, continued to earn benefits for which Ceridian was now telling him he was not entitled.

38.     Were that the case, Plaintiff forever lost four years of retirement which he could have enjoyed, rather than working to improve the financial performance of Ceridian, for which the company gained handsomely.

39.     On January 31, 2018, the day after the telephone conversation, Defendant Ceridian's Director of Global Benefits memorialized the 'discounted' pension amount via email communication.

40.     On February 3, 2018, Plaintiff responded to the January 31, 2018 email, stating, among other points, that he has "made some significant financial decisions in good faith based on" the original agreement.

10

41.     In an undated letter, at some point following his February 3, 2018 email, Defendant Ceridian's Vice President of Compensation & Benefits sent Plaintiff a letter stating that the discrepancy in calculating the amount owed to Plaintiff under his pension plans was due to a limitation, error, or glitch in "the program used to calculate the estimated Plan benefits…."

42.     In a follow-up letter, dated March 20, 2018, Defendant Ceridian's Executive Vice-President and General Counsel stated that Plaintiff was "given incorrect benefit estimate information because no one realized that the plan's actuarial factors would cause your 'frozen' benefit to increase more rapidly than the law allows… the plan's automated system was not set up to handle your unique situation (neither was Wells Fargo's, it appears)."

43.     Defendant Ceridian's March 20, 2018 letter also, contradictorily, stated that Defendant "did not provide [Wells Fargo] updated compensation information after the plan froze, as it was reasonably assumed at the time that there was no reason to do so… It was not until your final benefit numbers were run that the accrued benefit was compared to the legal limit."

44.     Documents later received by Plaintiff's counsel, previously in the possession of Defendants, unequivocally contradict the initial explanations provided by Defendant Ceridian – chiefly a document entitled "Declaration of Compliance with Internal Revenue Code Section 415" (the "415 Declaration.")

45.   The 415 Declaration, signed by Ceridian's Vice President of Compensation & Benefits, dated October 4, 2013, states:

**Declaration of Compliance with Section 415 and Authorization to Forego Future Compliance Tests with respect to Section 415**

… [T]he plan sponsor **will not submit** compensation information to Wells Fargo, and Wells Fargo **will perform no further tests** that the benefits provided satisfy Internal Revenue Code Section 415, unless such testing is required in the future, at which time compensation will be provided and testing will be performed. (Emphasis added).

46.   Defendant Ceridian's rationale to Plaintiff regarding his previous pension estimates were, in light of the 415 Declaration, patently false.

47.   On April 4, 2018, Plaintiff, and his legal counsel, requested all information relating to the pension, pension plan changes, amendments and the like, specifically delineating relevant documents Plaintiff was entitled to.

48.   Most, if not all, of the documents were required to be supplied, by law, under ERISA Section 104, 29 U.S.C. § 29 U.S.C. § 1024 – within 30 days.

49.   On April 5, 2018, Defendant acknowledged receipt of the document demand.

50.   On May 3, 2018, Defendant Ceridian sent Plaintiff some, but not all, of the requested information, knowing full well Plaintiff was operating under a 60-day ERISA appeal period, according to the Plan.

51.   Plaintiff reserved his rights to supplement and timely filed his appeal, despite Defendant Ceridian withholding, among other documents, those related to

the so-called plan freeze.

52.     Despite the legally incomplete response to a request for documents made under ERISA, including never having produced the requested plan documents, Defendant Ceridian denied Plaintiff's administrative appeal and indicated that he had fully exhausted his administrative remedies under the Retirement Plan.

53.     Defendants and their related entities have established and carried out a deliberate and coordinated policy to deny Plaintiff his benefits and retain his contributions to improve Defendant Ceridian's overall financial appearance in connection with its public offering and private placement.

54.     Defendants' actions also constitute a violation of their fiduciary duties owed to Plaintiff to fairly and properly construe and interpret the Plans' language for the "exclusive purpose of providing benefits to participants and beneficiaries" as is required of claims administrators, insurers, and fiduciaries under ERISA Section 404(a)(1), 29 U.S.C. § 1104(a)(1).

55.     Each of the Defendants are operating under various conflicts of interest.

56.     Further, Defendants have unduly hampered the processing of this pension claim, in violation of their fiduciary obligations and those regulations promulgated by the Department of Labor. Specifically, Defendants have:

a.      Provided deliberately misleading communications which do not accurately inform participants about their rights and duties under their

plan documents;

b.   Failed to timely produce plan documents, and other relevant documents, to allow Plaintiff to fully and properly appeal his claims administratively;

c.   Used a host of improper procedural denials to deny the full payment and/or frustrate the resolution of claims, such as deliberately misconstruing U.S. tax law to cover up plan-based errors and/or misrepresentations;

d.   Provided incorrect and invalid reasons for denying Plaintiff's claim, including issuing misleading denials, leading to still further confusion; and

e.   Eliminated from consideration any favorable evidence rebutting their own self-serving, internally-generated positions.

## IV.      DEFENDANTS' VIOLATIONS OF ERISA

57.   ERISA requires every employee benefit plan to provide for one or more named fiduciaries who will have the "authority to control and manage the operations and administration of the Plan" ERISA Section 402(a)(1), 29 U.S.C. § 1102(a)(1).

58.   At all relevant times, Defendants were "fiduciaries" within the scope of ERISA through their exercise of discretionary authority, control and responsibility over the design, implementation and administration of the Plan.

14

59.     As a matter of policy, Defendants have wrongfully refused to pay or release to Plaintiff his fully earned pension benefits.

60.     Defendants have intentionally misconstrued and/or ignored the terms of the Plan.

61.     Defendants have failed to provide any explanation or evidence in support of their claims decision which asserts Defendant Ceridian cannot pay benefits when, legally, that is untrue.

62.     Instead, the real reason Defendant Ceridian does not want to pay benefits is that it would be forced to admit administrative malfeasance and potentially violations of other participants' rights who are fellow plan members.

63.     Defendants' failure to provide evidence in support of their position constitutes a failure to provide full and fair review of the decision to deny benefits, in violation of ERISA Section 503(2), 29 U.S.C. § 1133(2).

64.     By administering the Plans in the manner described in this Complaint, Defendants have failed to exercise the utmost loyalty and care of a prudent person engaged in similar activity under prevailing circumstances, in violation of ERISA.

65.     Plaintiff has exhausted all his administrative remedies, and, given Defendants' actions, including their failure to produce documents and misrepresentations, it would be futile to further exhaust his administrative remedies.

**COUNT I**
**ACTION AGAINST DEFENDANTS, AS PLAN ADMINISTRATORS, FOR VIOLATIONS OF ERISA SECTION 502(c), 29 U.S.C. § 1132(c) AND TO COMPEL PRODUCTION OF PLAN DOCUMENTS**

66.     Plaintiff realleges all preceding allegations.

67.     Plaintiff, as a "participant" under ERISA, is entitled to request and review those Plan documents and instruments that are used to administer or interpret his Plan.

68.     Defendant Ceridian is the Plan Administrator as the term is defined by ERISA Section 3(16)(A); 29 U.S.C. § 1002(16)(A).

69.     On April 4, 2018, Plaintiff, through his authorized representative, issued a document request to Defendants, requesting by name and category instruments under which the Plan is administered and specific documents in relation to plan administration.

70.     On April 5, 2018, Defendant Ceridian sent Plaintiff's representatives an email acknowledging the request.

71.     By law, all of the requested documents were due on May 4, 2018.

72.     A complete response inclusive of all requested documents was not, and has yet to be, received by Plaintiff.

73.     Despite confirming receipt of the request for documents by letter on April 30, 2018, Defendant Wells Fargo has failed entirely to respond to the document request in any form.

16

74.     Accordingly, Plaintiff was required to exhaust his administrative remedies without access to full and complete documents, as required under ERISA.

75.     To date, those documents have not been produced and remain outstanding.

76.     Plaintiff has been harmed and prejudiced because of Defendants', his Plan Administrators, actions.

77.     In accordance with ERISA Section 502(c)(1)(B), 29 U.S.C. § 1132(c)(1)(B), and 29 C.F.R. § 2575.502c-1, beginning May 5, 2018, and for each day thereafter, Defendant is liable for per diem penalties in the amount of $110 per day until the documents have been produced.

WHEREFORE, Plaintiff requests entry of an order compelling production of his requested Plan documents, imposition of per diem penalties in an amount to be determined, plus costs and attorney fees, and any other relief to which Plaintiff is entitled.

## COUNT II
## ACTION TO RECOVER FULL PENSION BENEFITS AGAINST DEFENDANT CERIDIAN UNDER ERISA SECTION 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)

78.     Plaintiff realleges all preceding allegations.

79.     Plaintiff is entitled to the proper payment of pension benefits under the terms of his Plan.

80.    Defendant Ceridian has failed to pay Plaintiff his promised pension benefits in accordance with the Plan and the documents under which the Plan is administered.

81.    Defendant Ceridian has failed to properly interpret its own plan language, despite Plaintiff's satisfaction of the Plans' eligibility requirements.

82.    Defendant Ceridian's failure to pay Plaintiff his promised benefits is not based on a deliberate, principled reasoning process or substantial evidence, in violation of the Plan terms and ERISA.

83.    Defendant Ceridian's rationale offered in support of its denial of Plaintiff's benefits is not encompassed by the terms of the Plan and is a violation of the Plan and ERISA.

84.    Defendant Ceridian's decision is both incorrect and unreasonable.

85.    Defendant Ceridian is operating under an incurable conflict of interest.

86.    Accordingly, Plaintiff is entitled to immediate payment of full pension benefits and entitled to clarify and enforce his rights to payment of those benefits still due and owing through the entry of an injunction in accordance with the terms of the Plan.

WHEREFORE, Plaintiff requests equitable relief set forth above, including injunctive relief, in his favor and against Defendant Ceridian plus costs, interest, and attorney fees, equitable disgorgement, declaratory relief, and any other relief to

which Plaintiff is entitled.

## COUNT III
## ACTION AGAINST DEFENDANT CERIDIAN UNDER ERISA SECTION 502(a)(3), 29 U.S.C. § 1132(a)(3) FOR UNJUST ENRICHMENT AND EQUITABLE RELIEF

87.     Plaintiff realleges all preceding paragraphs.

88.     Plaintiff was repeatedly promised pension benefits and supplied with written and oral statements containing material facts concerning his eligibility, communicated to him over an uninterrupted period of more than three years.

89.     Plaintiff was promised, had earned, and was entitled to those promised benefits.

90.     Defendant Ceridian knew, or should have known, that a long-tenured employee such as Plaintiff would be making retirement decisions based on information supplied to him by his plan.

91.     When it came time to pay over those earned benefits, Defendant Ceridian falsely claimed that certain IRC tax limits precluded paying Plaintiff his earned benefits.

92.     Those representations were false when made as the cited tax law did not serve to displace, eliminate, or restrict in any material manner Plaintiff's entitlement to those earned benefits.

93.     In other words, the tax law does not require plan benefit forfeiture as maintained by Defendant Ceridian.

94.    Defendant Ceridian has, upon information and belief, allowed the earned contributions to remain in the Plan or, alternatively, withdrawn them for its own benefit, despite those proceeds rightfully belonging to Plaintiff.

95.    Defendant Ceridian has been unjustly enriched by its own improper actions.

96.    Owing to Defendant Ceridian's breaches of its duties as described herein, Plaintiff has been harmed, continues to be harmed, and will be harmed in the future, due to the acts or omissions detailed above.

97.    Therefore, Plaintiff respectfully requests, among other things, (1) that the Court declare the Defendant Ceridian has been unjustly enriched at the expense of Plaintiff and issue an order compelling Defendant to immediately pay over or return to Plaintiff those benefits he earned while in the Plan, and 2) provide other appropriate equitable relief necessary to redress Defendant's violations and to enforce the law and the Plan.

WHEREFORE, Plaintiff requests equitable relief set forth above, including injunctive relief, in his favor and against Defendant Ceridian plus costs, interest, and attorney fees, equitable disgorgement, declaratory relief, and any other relief to which Plaintiff is entitled.

## COUNT IV
## ACTION UNDER ERISA SECTION 502(a), 29 U.S.C. § 1132(a) FOR
## BREACH OF FIDUCIARY DUTY AGAINST DEFENDANTS

98. Plaintiff realleges all preceding paragraphs.

99. Plaintiff was entitled to a fair and proper administration of his benefit plan by Defendants, all of whom are fiduciaries under ERISA.

100. Defendants are operating under an incurable conflict of interest owing to their actions with respect to Plaintiff in connection with Defendant Ceridian's IPO and private placement.

101. Defendants have breached their fiduciary duties to Plaintiff and/or aided and abetted a breach of duties to Plaintiff.

102. Defendants should be held personally liable for surcharge and unjust enrichment, as well as legally responsible for breaching their duties to Plaintiff for the conduct alleged herein.

WHEREFORE, Plaintiff requests full legal and equitable relief, including injunctive relief and surcharge, against Defendants plus costs, interest, and attorney fees, equitable disgorgement, declaratory relief, and any other relief to which Plaintiff is entitled.

## COUNT V
## ACTION AGAINST DEFENDANTS UNDER ERISA SECTION 502(a),
## 29 U.S.C. § 1132(a) FOR EQUITABLE ESTOPPEL

103. Plaintiff realleges all preceding paragraphs.

104.    Defendants made a series of material misrepresentations to the Plaintiff concerning his rights under his benefit plan.

105.    Based on these material misrepresentations and admissions, Defendants induced justifiable reliance and/or a change in the legal position of the Plaintiff.

106.    Defendants' statements, and those of their agents, were clear and definite.

107.    Allowing the Defendants to avoid responsibility or liability for their representations would be inequitable.

108.    Accordingly, Defendants should be equitably estopped from denying that they are responsible for liability for all sums owed to Plaintiff.

WHEREFORE, Plaintiff requests full relief under ERISA, including appropriate equitable relief, injunctive relief against Defendants plus costs, interest, and attorney fees, equitable disgorgement, declaratory relief, and all other relief to which Plaintiff is entitled.

DATED:   Honolulu, Hawaii, July 20, 2018.

/s/ Michael A. Lilly
MICHAEL A. LILLY
VALERIE KATO

JOHN J. CONWAY, III, *pro hac vice (app. pend)*
Attorneys for Plaintiff
CALVIN L. HUTTON